IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

AMBER S DANLEY,

        Plaintiff,

   vs.                        Civil Action 2:14-cv-1241
                                     Judge Sargus
                                     Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

### REPORT AND RECOMMENDATION

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income. This matter is now before the Court on *Plaintiff's Statement of Errors* ("*Statement of Errors*"), Doc. No. 12, *Defendant's Memorandum in Opposition*, Doc. No. 13, and *Plaintiff's Reply,* Doc. No. 14.

**I.**   **Background**

Plaintiff Amber S. Danley filed her application for benefits on August 17, 2011, alleging that she has been disabled since January 31, 2007. *PAGEID* 63, 217-22. The claim was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

An administrative hearing was held on February 25, 2013, at which plaintiff, represented by counsel, appeared and testified, as did John Finch, who testified as a vocational expert. *PAGEID* 83. In a decision dated April 15, 2013, the administrative law judge concluded

that plaintiff was not disabled from August 17, 2011, through the date of the administrative decision. *PAGEID* 63-75. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on July 22, 2014. *PAGEID* 50-54.

Plaintiff was 24 years of age on the date of the administrative decision. *See PAGEID* 75, 217. Plaintiff has a limited education, is able to communicate in English, and has no past relevant work. *PAGEID* 73. She has not engaged in substantial gainful activity since August 17, 2011, the application date. *PAGEID* 65.

## II.  **Evidence of Record**[1]

Eric Kahn, M.D., completed a Medical Functioning Capacity Assessment on February 19, 2009. *PAGEID* 1415-16. Dr. Kahn opined that plaintiff was moderately limited in 13 of 20 areas of functioning related to understanding and memory, sustained concentration and persistence, social interaction, and adaptation. *PAGIED* 1415. Plaintiff was markedly limited in three areas and extremely limited in the remaining four areas. *Id.* Dr. Kahn noted that plaintiff had been diagnosed with bipolar disorder and was "tense, labile, depressed." *PAGEID* 1416.

Plaintiff treated with Richard A. Black, M.D., at Moundbuilders Guidance Center from May 2009 through May 2010, and at Behavioral Healthcare Partners from July 2010 through at least September 2012. *PAGEID* 1150-60, 1171-1230, 1279-1328, 1349-94. On June 9, 2011, Dr.

---

[1]  The Court's discussion of the evidence is limited to the issues presented in plaintiff's *Statement of Errors*.

2

Black diagnosed "Bipolar Disorder, recurrent, depressed – better; Social Anxiety Disorder – better." *PAGEID* 1199.  In July 2011, plaintiff described her mood as "mostly okay" and said she did not feel like life was going very well, but she reported spending time in the pool and having "some enjoyable occasions during the summer months." *PAGEID* 1200.  Plaintiff was distressed, but not depressed, and her affect was slightly restricted in September 2011.  *PAGEID* 1205-1209.  Dr. Black encouraged plaintiff "to try to find activities that were rewarding and relaxing and increase her down time with exercise." *Id*.  Plaintiff worked as a cashier in September 2011, but reported in November 2011 that she had stopped working because of panic attacks. *PAGEID* 1209, 1219.  Plaintiff also reported that she was distressed in November 2011 after she had moved in with her boyfriend, and in December 2011 when they broke up.  *PAGEID* 1214, 1219.  Dr. Black diagnosed "Bipolar Disorder, NOS; Social Anxiety Disorder" in November 2011, and "Bipolar disorder recurrent depressed; social anxiety disorder; relationship conflict" in December 2011. *PAGEID* 1218, 1223.

On March 16, 2012, plaintiff reported that she was distressed about having neither a car nor a job. *PAGEID* 1380.  Plaintiff informed Dr. Black that she was "reapplying for disability and . . . that she gets too upset in a work environment and has trouble getting along with other people and phobic about things." *Id*.  Plaintiff reported being between boyfriends and sad about a cousin who had died.

3

*PAGEID* 1380-83.  Plaintiff's mood was sad and her affect was reactive but subdued.  *PAGEID* 1380.  Dr. Black "recommended she find more time to be with her father and other family members and take walks through the weather, improvement, help her feel better as well." *PAGEID* 1383. Dr. Black diagnosed "Bipolar disorder recurrent depressed – partial remission; social anxiety disorder; relationship conflict." *PAGEID* 1384.

Dr. Black completed a mental residual functional capacity assessment on March 20, 2012.  According to Dr. Black, plaintiff was moderately limited in 13 of 20 areas of functioning related to understanding and memory, sustained concentration and persistence, social interaction, and adaptation.  *PAGEID* 1229-30.  Plaintiff was not significantly limited in the remaining seven areas.  *Id*.  Dr. Black opined that plaintiff's condition would likely deteriorate if she were placed under stress and that plaintiff is not capable of engaging in substantial gainful competitive employment.  *PAGEID* 1230.

Plaintiff treated with social worker Karen Kasten, LISW-S, at Behavioral Healthcare Partners from July 19, 2011, through January 19, 2013.  *PAGEID* 1291-1303, 1310-11, 1329-34, 1340-41, 1347-48, 1354-61, 1367-70, 1376-79, 1385-89, 1395-1409.  Ms. Kasten completed a mental residual functional capacity assessment on March 29, 2012.  *PAGEID* 1235-36.  According to Ms. Kasten, plaintiff was markedly limited in 11 of 20 areas of functioning related to understanding and memory, sustained concentration and persistence, social interaction, and

4

adaptation. *Id*. Plaintiff was moderately limited in eight areas of functioning and not significantly limited in one area. *Id*. Ms. Kasten opined that plaintiff's condition would likely deteriorate if she were placed under stress and that plaintiff is not capable of engaging in substantial gainful competitive employment. *PAGEID* 1236. Ms. Kasten explained that plaintiff "does not handle change or stress effectively. She gets frustrated easily and has to leave the situation to re-group. She has had to go home and could not even go into a store or go to work w/o panic attacks. It also effects [sic] her social life." *Id*. According to Ms. Kasten, plaintiff "has tried to work but had to leave in 2 days because she was afraid she was going to 'blow-up' and possibly hurt someone." *Id*.

Frank Orosz, Ph.D., reviewed the record on October 7, 2011, and opined that plaintiff has mild restrictions in activities of daily living, and moderate difficulties in maintaining social functioning, concentration, persistence, and pace. *PAGEID* 144-46. Because of her borderline intellectual functioning, plaintiff could complete simple one to three step tasks and, because of her anxiety and depression, she could not handle demands for fast pace. *PAGEID* 146-47. Plaintiff can interact with others only on an infrequent and superficial basis; she may become overly anxious and withdrawn in an environment where she must constantly interact with the general public. *PAGEID* 147. Plaintiff would also need to have a consistent work setting with static changes. *Id*.

5

Roseann Umana, Ph.D., reviewed the record and completed a mental residual functional capacity assessment on January 18, 2012. *PAGEID* 158-59. According to Dr. Umana, plaintiff's "anxiety and depression may interfere with her ability to concentrate on detailed tasks for extended periods of time. Concentration is adequate for routine, repetitive tasks. Stress tolerance is limited. Claimant can adapt to work settings in which duties are routine and predictable." *PAGEID* 158. Because plaintiff "may become overly anxious and withdrawn if in an environment where she must consistently interact with the general public and coworkers[,] [she] can interact on an infrequent and superficial basis." *PAGEID* 159. Dr. Umana further opined that, due to borderline intellectual functioning and symptoms of anxiety, plaintiff "may have difficulty keeping up in a constant changing work setting. [Plaintiff] can complete simple tasks in a consistent work setting in which duties are routine and predictable." *Id.*

Plaintiff was evaluated by Sudhir Dubey, Psy.D., on March 19, 2013. *PAGEID* 1418-29. Plaintiff presented with symptoms consistent with a diagnosis of depressive disorder, NOS. *PAGEID* 1423. Plaintiff was "tense, overly dramatic, uncooperative, anxious and avoidant." *Id.* Plaintiff's thought processes were coherent and logical, but her recall was limited. *PAGEID* 1423-24. "Consistency with the reported conditions appeared to be showing exaggerated presentation." *PAGEID* 1423. Plaintiff did not need "simple or multistep directions" or "simple or multi-part questions" repeated, and she "appeared to

understand questions that were asked." *PAGEID* 1423-24.  Dr. Dubey

further opined that plaintiff's

> self-report and general interactional style was internally
> inconsistent with the information she provided as evidenced
> by she answered specific questions with vague responses,
> i.e. "I don't know" and "I don't remember", but was able to
> provide intermittent details about time frames which she
> claimed not to remember at all.  She appeared to be
> magnifying reported symptoms, by giving vague details and
> effect of the condition she was alleging.  Alleging mental
> health issues keep her from leaving home, but did not
> evidence any significant symptoms in the context of the
> evaluation setting and process.  She initially gave up
> easily on answering the questions that were presented, but
> was able to manage adequately when further prompted to do
> so.

*PAGEID* 1424.  Dr. Dubey assigned a global assessment of functioning

score of 60 and diagnosed depressive disorder, NOS.  *Id.*  Dr. Dubey

opined that, in a work setting, plaintiff "would be able to

understand, remember, and carry out simple instructions, such as one

step processes, independently.  In a work setting, . . . she would be

able to understand, remember, and carry out multi-step instructions

independently."  *Id.*  Plaintiff "would be able [to] maintain

persistence and pace to remember, and carry out simple instructions

independently."  *PAGEID* 1425.  Plaintiff could not "maintain

persistence and pace to remember, and carry out multi-step

instructions independently," but "would be able to perform these types

of tasks with supervision."  *Id.*  Dr. Dubey further opined that

plaintiff "will have moderate issues dealing with co-workers and

supervisors."  *Id.*  Moreover, because of "mood related problems and

associated frustration," plaintiff "will have moderate issues dealing with work pressure." *PAGEID* 1426.

Dr. Dubey also completed a medical source statement on March 19, 2013. *PAGEID* 1427-28. According to Dr. Dubey, plaintiff had mild limitations in understanding and remembering complex instructions, carrying out complex instructions, making judgments or complex work-related decisions, and interacting appropriately with the public and co-workers. *Id.* Plaintiff had moderate limitations in interacting appropriately with supervisors and responding appropriately to usual work situations and to changes in a routine work setting. *Id.* According to Dr. Dubey, "mood related lability may affect attention and concentration as related to complex situations" and mood related factors lead to lability in dealing w/supervisory relationships." *Id.*

## III. Administrative Decision

The administrative law judge found that plaintiff's severe impairments consist of bipolar disorder, depression, cannabis dependence, a personality disorder with antisocial features, an anxiety disorder, and borderline intellectual functioning. *PAGEID* 65. The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity ("RFC") to perform

> a full range of work at all exertional levels, but with the following nonexertional limitations: she is limited to the performance of simple, routine and repetitive tasks, in a work environment free of fast-paced quota requirements, involving only simple work related decisions, with few if any workplace changes. In addition, the claimant is

8

limited to no more than occasional interaction with coworkers or the general public.

*PAGEID* 65-67.  The administrative law judge found that plaintiff has no past relevant work.  *PAGEID* 73.  He also relied on the testimony of the vocational expert to find that plaintiff is able to perform a significant number of jobs in the national economy, including such representative occupations as cart attendant, laborer, and laundry worker.  *PAGEID* 73-74.

**IV.  Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole.  *Kirk*, 667

9

F.2d at 536.  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *Longworth,* 402 F.3d at 595.

In her *Statement of Errors*, plaintiff argues that the administrative law judge erred in evaluating the medical opinions of record.  Plaintiff argues, first, that the administrative law judge erred in evaluating the opinion of treating physician Dr. Black.  Plaintiff specifically argues that the administrative law judge erred by accepting Dr. Black's opinion of plaintiff's functional impairments but not including the limitations found by Dr. Black in plaintiff's RFC determination.  *Statement of Errors*, pp. 9-11.  According to plaintiff, the administrative law judge "indicates that Dr. Black's opinion as to Plaintiff's functional limitations are consistent with her treatment record as well as other medical opinions but then the ALJ fails to give the opinion controlling weight and provides no explanation for not doing so."  *Id*. at p. 11.  Plaintiff further argues that the administrative law judge "misstates the evidence as it relates to Dr. Black's opinion, indicating that Dr. Black's assessment of the level of Plaintiff's limitations is inconsistent with the opinion that Plaintiff cannot engage in substantial gainful competitive employment" because a moderate limitation in the ability to sustain an ordinary routine without special supervision would be

10

work preclusive.  *Id*.

The opinion of a treating provider must be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 416.927(c)(2).  Even if the opinion of a treating provider is not entitled to controlling weight, an administrative law judge is nevertheless required to evaluate the opinion by considering such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole.  20 C.F.R. § 416.927(c)(2)-(6); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Moreover, an administrative law judge must provide "good reasons" for discounting the opinion of a treating provider, *i.e.*, reasons that are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).  This special treatment afforded the opinions of treating providers recognizes that

> "these sources are likely to be the medical professionals
> most able to provide a detailed, longitudinal picture of

11

> [the claimant's] medical impairment(s) and may bring a
> unique perspective to the medical evidence that cannot be
> obtained from the objective medical findings alone or from
> reports of individual examinations, such as consultative
> examinations or brief hospitalizations."

*Wilson,* 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)).

Plaintiff treated with Dr. Black from May 2009 through September 2012. *PAGEID* 1150-60, 1171-1230, 1279-1328, 1349-94. In a March 20, 2012, mental residual functional capacity assessment, Dr. Black opined that plaintiff was either not significantly or not moderately limited in several areas of functioning related to understanding and memory, sustained concentration and persistence, social interaction, and adaptation. *PAGEID* 1229-30. Plaintiff was moderately limited in her ability to (1) remember locations and work-like procedures, (2) understand and remember detailed instructions, (3) carry out detailed instructions, (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (5) sustain an ordinary routine without special supervision, (6) work in coordination with or proximity to others without being distracted by them, (7) complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (8) interact appropriately with the general public, (9) accept instructions and respond appropriately to criticism from supervisors, (10) get along with coworkers or peers without distracting them or exhibiting behavioral extremes, (11) maintain

12

socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, (12) respond appropriately to changes in the work setting, and (13) set realistic goals or make plans independently of others. *Id.* Dr. Black opined that plaintiff was not significantly limited in her ability to (1) understand and remember very short and simple instructions, (2) carry out very short and simple instructions, (3) maintain attention and concentration for extended periods, (4) make simple work-related decisions, (5) ask simple questions or request assistance, (6) be aware of normal hazards and to take appropriate precautions, and (7) travel in unfamiliar places or use public transportation. *Id.* According to Dr. Black, plaintiff's condition would likely deteriorate if she were placed under stress, particularly the stress of a job. *PAGEID* 1230. Dr. Black further opined that plaintiff is not capable of engaging in substantial gainful competitive employment. *Id.*

The administrative law judge categorized Dr. Black as a treating psychiatrist, summarized Dr. Black's treatment notes dating from 2010, and then evaluated Dr. Black's opinion as follows:

> Richard Black, M.D., completed a checkbox medical source statement in March of 2012. He opined that the claimant's mental health impairments caused mild to moderate functional limitations in each of the functional domains but stated that he did not think that the claimant would be capable of engaging in competitive employment (45F). . . . The undersigned considered these opinions and determined that Dr. Black's opinion was somewhat credible. Dr. Black's conclusions were partially credible because he indicated that the claimant's impairments caused, at most, mild to moderate functional limitations, which was consistent with the claimant's treatment record and the

13

weight of the other medical opinion evidence as discussed above. Further, he was one of the claimant's treating psychiatrists, which indicates that he has considerable knowledge and familiarity with the claimant and her symptoms. However, Dr. Black's conclusion that the claimant could not work was not consistent with his own opinion that the claimant had, at most, moderate functional impairment. In addition, he did not indicate in his treatment notes that the claimant could not work, and none of the claimant's other providers indicated that she was consistently unable to work. In addition, Dr. Black completed a checkbox form without providing substantive explanation of his selections or as to why he felt that the claimant was unable to work. Accordingly, the undersigned determined that Dr. Black's functional conclusions were generally credible but his conclusion regarding the claimant's overall ability to work was not credible.

*PAGEID* 68-69, 71-72.

The administrative law judge did not violate the treating physician rule in evaluating Dr. Black's opinion. Plaintiff's arguments to the contrary notwithstanding, *see Statement of Errors*, pp. 9-11; *Plaintiff's Reply*, pp. 1-4, the administrative law judge did not adopt each of the functional limitations opined by Dr. Black. Instead, the administrative law judge found that Dr. Black's opinion was "somewhat credible" and that Dr. Black's opinion that plaintiff's "mental health impairments caused mild to moderate functional limitations in each of the functional domains" "was consistent with the claimant's treatment record and the weight of the other medical opinion evidence as discussed [by the administrative law judge]." *PAGEID* 71. The administrative law judge discounted Dr. Black's opinion that plaintiff could not work because that opinion was not consistent with Dr. Black's treatment notes and was inconsistent with

14

his opinion that plaintiff had, at most, moderate functional impairment; the administrative law judge also noted that none of plaintiff's other providers indicated that she was consistently unable to work, and that Dr. Black completed a checkbox form without explaining why he concluded that plaintiff was unable to work. *PAGEID* 71-72.  These conclusions are supported by substantial evidence. Notably, Dr. Black opined that plaintiff was either not significantly limited or had moderate limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaptation. *PAGEID* 1229-30.  The administrative law judge included borderline intellectual functioning as a severe impairment and found that plaintiff had moderate difficulties in social functioning and in the areas of concentration, persistence, and pace. *PAGEID* 65-66.  The administrative law judge did not couch plaintiff's limitations in the same terms as did Dr. Black, but he included limitations in the RFC determination to account for plaintiff's limitations in understanding and memory, by limiting her to "the performance of simple, routine, and repetitive tasks;" plaintiff's limitations in sustained concentration and persistence, by limiting her to "a work environment free of fast-paced quota requirements, involving only simple work related decisions;" plaintiff's limitations in social interaction, by limiting her "to no more than occasional interaction with coworkers or the general public;" and plaintiff's limitations in adaptation, by limiting her to a work environment "with few if any workplace

15

changes." *PAGEID* 67.  Moreover, it is also apparent from the record that the administrative law judge considered the appropriate factors in evaluating Dr. Black's opinion. In short, the administrative law judge did not err in his evaluation of Dr. Black's opinions.

Plaintiff next argues that the administrative law judge erred in evaluating the opinion of Dr. Dubey, the consultative examiner. *Statement of Errors*, pp. 12-14.  Plaintiff argues that Dr. Dubey reviewed an incomplete record consisting of only four documents and complains that Dr. Dubey met with plaintiff for only twenty minutes. *Id.*  Although plaintiff brought these alleged deficiencies to the attention of the administrative law judge, the latter "fail[ed] to address the inadequacy of time or inadequacy of information provided to Dr. Dubey in the decision." *Id.* at p. 13.  Plaintiff contends that the administrative law judge should have considered these factors and that his "failure to do so renders his evaluation and crediting of Dr. Dubey's opinion with significant weight unsupported by substantial evidence." *Id.* at pp. 13-14.

Plaintiff was consultatively evaluated by Dr. Dubey on March 19, 2013.  *PAGEID* 1418-29.  Dr. Dubey found that plaintiff was "tense, overly dramatic, uncooperative, anxious and avoidant." *PAGEID* 1423. Plaintiff did not need "simple or multistep directions" or "simple or multi-part questions" to be repeated, and she "appeared to understand questions that were asked." *PAGEID* 1423-24.  Dr. Dubey opined that plaintiff's

16

> self-report and general interactional style was internally
> inconsistent with the information she provided as evidenced
> by she answered specific questions with vague responses,
> i.e. "I don't know" and "I don't remember", but was able to
> provide intermittent details about time frames which she
> claimed not to remember at all. She appeared to be
> magnifying reported symptoms, by giving vague details and
> effect of the condition she was alleging. Alleging mental
> health issues keep her from leaving home, but did not
> evidence any significant symptoms in the context of the
> evaluation setting and process. She initially gave up
> easily on answering the questions that were presented, but
> was able to manage adequately when further prompted to do
> so.

*PAGEID* 1424. Dr. Dubey assigned a GAF of 60 and diagnosed a

depressive disorder, NOS. *Id.* Dr. Dubey opined that, in a work

setting, plaintiff "would be able to understand, remember, and carry

out simple instructions, such as one step processes, independently.

In a work setting, . . . she would be able to understand, remember,

and carry out multi-step instructions independently." *Id.* Plaintiff

"would be able [to] maintain persistence and pace to remember, and

carry out simple instructions independently." *PAGEID* 1425. Although

plaintiff could not "maintain persistence and pace to remember, and

carry out multi-step instructions independently," she "would be able

to perform these types of tasks with supervision." *Id.* Dr. Dubey

further opined that plaintiff "will have moderate issues dealing with

co-workers and supervisors." *Id.* Moreover, because of "mood related

problems and associated frustration," plaintiff "will have moderate

issues dealing with work pressure." *PAGEID* 1426.

In his medical source statement, Dr. Dubey opined that plaintiff

had mild limitations in understanding and remembering complex

17

instructions, carrying out complex instructions, making judgments on complex work-related decisions, interacting appropriately with the public, and interacting appropriately with co-workers. *PAGEID* 1427-28. Plaintiff had moderate limitations in interacting appropriately with supervisors and responding appropriately to usual work situations and to changes in a routine work setting. *Id*. According to Dr. Dubey, "mood related lability may affect attention and concentration as related to complex situations" and mood related factors would "lead to lability in dealing w/supervisory relationships." *Id*.

As a consultative psychological examiner, Dr. Dubey is properly classified as a nontreating source. *See* 20 C.F.R. §§ 416.902 ("Nontreating source means a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]."). With regard to nontreating sources, the agency will simply "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined" the claimant. 20 C.F.R. § 416.927(d)(1). In evaluating the opinion of a nontreating source, an administrative law judge should consider such factors as "the evidence that the physician offered in support of h[is] opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in h[is] specialty." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010)(citing 20 C.F.R. § 404.1527(d)).

18

The administrative law judge accurately summarized Dr. Dubey's report, and evaluated Dr. Dubey's opinion and assigned it "significant weight:"

> The undersigned considered Dr. Dubey's opinion and determined that it was generally credible. Specifically, he completed a comprehensive assessment and documented his interactions with the claimant. His diagnostic notes contained a considerable amount of information from the claimant, documented multiple tests that were completed, and discussed the claimant's presentation and likely functional impairment at length. Further, Dr. Dubey's conclusions were generally consistent with the claimant's treatment record, as discussed in detail above, and were generally consistent with the other credible medical opinion evidence of record. The undersigned noted that there were a few internal inconsistencies between Dr. Dubey's narrative statements and his checkbox form, but that overall, he never indicated that the claimant had more than moderate functional impairment in any domain. All told, the weight of the evidence supported Dr. Dubey's opinion and therefore the undersigned determined that his opinion was entitled to significant weight.

*PAGEID* 72-73.

The administrative law judge relied on Dr. Dubey's opinion in formulating his RFC assessment and was sufficiently specific as to the reasons for doing so. The administrative law judge noted Dr. Dubey's specialization as a psychologist and noted, too, that Dr. Dubey completed a "comprehensive assessment and documented his interactions with the claimant," "documented multiple tests that were completed, and discussed the claimant's presentation and likely functional impairment at length." *Id*. The administrative law judge cited some of the evidence offered by Dr. Dubey in support of his opinion and found that Dr. Dubey's conclusions were generally consistent with

19

plaintiff's treatment records and the credible medical opinion evidence of record.  *PAGEID* 73.  It is true, as plaintiff notes, that the administrative law judge did not expressly address the amount of time that Dr. Dubey spent evaluating plaintiff, nor did the administrative law judge mention the number of records that he reviewed.  There is, however, "a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." *See* SSR 06-03P, 2006 WL 2329939, at *5 (Aug. 9, 2006). An administrative law judge "'can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'"  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (quoting *Loral Def. Sys.—Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)). In the case presently before the Court, it is apparent from the record that the administrative law judge considered the appropriate factors in evaluating Dr. Dubey's opinion, and the findings of the administrative law judge in that regard are supported by substantial evidence.

Plaintiff also argues that the administrative law judge erred in relying on the opinions of the state agency reviewing psychologists, Dr. Orosz and Dr. Umana.  *Statement of Errors*, pp. 14-17.  As noted *supra*, Dr. Orosz reviewed the record on October 7, 2011, and opined that plaintiff has mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and moderate

20

difficulties in maintaining concentration, persistence, or pace.
*PAGEID* 144-46. Dr. Orosz opined that, because of her borderline
intellectual functioning, plaintiff could complete simple one to three
step tasks and that, because of her anxiety and depression, she could
not handle demands for fast paced work. *PAGEID* 146-47. According to
Dr. Orosz, plaintiff can interact on an infrequent and superficial
basis because she may become overly anxious and withdrawn if she were
placed in an environment where she must constantly interact with the
general public. *PAGEID* 147. Plaintiff would also need to have a
consistent work setting with static changes. *Id*.

Dr. Umana reviewed the record and completed a mental residual
functional capacity assessment on January 18, 2012. *PAGEID* 158-59.
According to Dr. Umana, plaintiff's "anxiety and depression may
interfere with her ability to concentrate on detailed tasks for
extended periods of time. Concentration is adequate for routine,
repetitive tasks. Stress tolerance is limited. Claimant can adapt to
work settings in which duties are routine and predictable." *PAGEID*
158. Because plaintiff "may become overly anxious and withdrawn if in
an environment where she must consistently interact with the general
public and coworkers[,] [she] can interact on an infrequent and
superficial basis." *PAGEID* 159. Dr. Umana further opined that, due
to borderline intellectual functioning and symptoms of anxiety,
plaintiff "may have difficulty keeping up in a constant changing work

21

setting.  [Plaintiff] can complete simple tasks in a consistent work setting in which duties are routine and predictable."  *Id.*

As physicians who did not examine plaintiff but who provided medical opinions in this case, Dr. Orosz and Dr. Umana are properly classified as nonexamining sources.  20 C.F.R. § 416.902 (A nonexamining source is "a physician, psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case.").  An administrative law judge is required to evaluate every medical opinion, regardless of its source.  20 C.F.R. §§ 416.920b, 416.927.  When evaluating the opinion of state agency reviewing physicians such as Dr. Orosz and Dr. Umana, the administrative law judge should consider factors "such as the consultant's medical specialty and expertise in [the Commissioner's] rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions."  20 C.F.R. § 416.927(e)(2)(ii).  "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical . . . consultant," "as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources."  *Id.*

22

In the case presently before the Court, the administrative law judge evaluated the state agency reviewing psychologists' opinions as follows:

> During the current period of consideration, Frank Orosz, Ph.D., a doctor employed by the State agency, evaluated the claimant's records in October of 2011.  He opined that the claimant would be able to complete simple tasks in a work environment that did not require fast-paced work and where the claimant could avoid frequent interaction with the public and coworkers.  Dr. Orosz further opined that the claimant would not be able to tolerate a constantly changing work environment, but could perform simple tasks in a more static environment (3A).  Roseann Umana, Ph.D., also a doctor employed by the State agency, evaluated the claimant's records in January of 2012.  She agreed with Dr. Orosz [sic] overall conclusions (5A).  The undersigned considered the State agency opinions and determined that they were generally credible.  The claimant's treatment records did not suggest that she had additional limitations and none of her treating providers consistently indicated that she had additional limitations as discussed in detail above.  Further, the weight of the credible medical opinion evidence supported their conclusions.  Further, while the State agency doctors were not examining physicians or psychiatrists, and did not evaluate the claimant in person, they did have the opportunity to evaluate almost all of the claimant's records on two separate occasions, which provided a valuable perspective on her functional capacity.  Given these factors, the undersigned determined that the State agency medical opinions were generally credible and entitled to significant weight.

*PAGEID* 71.

The administrative law judge followed the proper procedures when evaluating the opinions of Dr. Orosz and Dr. Umana, and his findings enjoy substantial support in the record.  Notably, the opinions of Dr. Orosz and Dr. Umana are consistent with the opinion of Dr. Dubey and the opinion of Dr. Black that plaintiff has mild to moderate functional limitations in each of the functional domains.

23

*See PAGEID* 1418-29, 1229-30.  Plaintiff disagrees with the administrative law judge's evaluation of the evidence, but this Court is not permitted to reweigh that evidence where, as here, the administrative law judge followed the proper procedures and his analysis is supported by substantial evidence.

Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence.  It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations

24

constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

February 23, 2015                          *s/Norah McCann King*
                                          Norah McCann King
                                   United States Magistrate Judge